76 A.3d 986

**David C. WINTERS**

v.

**STATE of Maryland.**

**No. 85, Sept. Term, 2012.**

Court of Appeals of Maryland.

Sept. 25, 2013.

528

Michael R. Braudes, Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Brenda Gruss, Asst. Atty. Gen. (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and BELL *, JJ.

GREENE, J.

The present case involves the question of whether a criminal defendant's waiver of his right to a jury trial was valid. More specifically, we are asked to address the validity of the waiver in light of the fact that, during the waiver colloquy, the trial judge provided the defendant with advice that the judge not only was not required to give to the defendant, but that was also erroneous. We shall conclude that the erroneous advisement may have misled the defendant to believe that a jury trial was a less attractive option than it actually would be under Maryland law, and, thereby, influenced the defendant's decision to waive his jury trial right. Accordingly, the trial judge did not satisfy his obligation to ensure that the waiver was knowing, and therefore, the defendant is entitled to a new trial.

## Facts and Procedural History

David Winters ("Petitioner" or "Winters") was charged with the murder of his father. In January 2009, Petitioner was tried in the Circuit Court for Montgomery County during a bench trial after entering pleas of not guilty and not criminally responsible.[1] After learning of Winters's desire to have a

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. A not criminally responsible plea, in substance, means "that when the alleged crime was committed, the defendant was not criminally responsible by reason of insanity under the test for criminal responsibility...." Md. Code (2001, 2008 Repl. Vol.), § 3–110(a)(1) of the Criminal

bench trial, the trial judge examined Winters in open court and announced on the record that Winters was knowingly and voluntarily waiving his right to a jury trial. During the waiver colloquy, the following ensued:

[Trial Judge]: What is your name?

[Petitioner]: David Winters.

[Trial Judge]: And are you represented by lawyers?

[Petitioner]: Yes, sir.

[Trial Judge]: And do you wish to waive a jury in this case?

[Petitioner]: Yes, sir.

[The trial judge inquires about the Petitioner's address, occupation, age, and marital status]

[Trial Judge]: How far have you gone in school?

[Petitioner]: High school diploma.

[Trial Judge]: You've received a high school diploma. Do you have any college?

[Petitioner]: No, sir.

[Trial Judge]: At the present time, are you under the influence of any narcotics, medication, or alcohol?

[Petitioner]: No, sir.

[Trial judge]: Are you suffering from any physical illness at the present time?

[Petitioner]: No, sir.

[Trial Judge]: All right, my understanding is that you have entered a plea of not criminally responsible. Does that condition make it difficult for you to understand what's going on here today?

[Petitioner]: No, sir.

[Trial Judge]: Do you fully understand what's going on here today?

[Petitioner]: Yes, sir.

---

Procedure Article (hereinafter, all references to the 2008 version of the Criminal Procedure article are indicated as "CP § ").

[Trial Judge]: Do you understand that you have a right to have a trial by a jury of 12 persons, both on the issue of guilt or innocence, and also on the issue of whether or not you were criminally responsible at the time of this alleged event?

[Petitioner]: Yes, sir.

[Trial Judge]: Do you understand that?

[Petitioner]: Yes, sir.

[Trial Judge]: Do you understand that unless you waive a trial by jury, your case will automatically be tried by a jury? Do you understand that?

[Petitioner]: Yes, sir.

[Trial Judge]: And do you understand that a jury trial is a trial by 12 people chosen by your lawyers, selected at random from the citizens of Montgomery County?

[Petitioner]: Yes, sir.

[Trial Judge]: *And do you understand that for such a jury to convict you or to find you either criminally responsible or not criminally responsible, they must unanimously, all together, vote to convict you or find you criminally responsible or not criminally responsible upon which the evidence they feel proves same by a reason—beyond a reasonable doubt? Do you understand that?*

[Petitioner]: Yes, sir.

[Trial Judge]: Do you understand that if you waive a jury trial, you are going to be tried by me alone, nobody else?

[Petitioner]: Yes, sir.

[Trial Judge]: Do you understand that you may not be permitted to change your election once the trial starts, if you subsequently change your mind and want to be tried by a jury?

[Petitioner]: Yes, sir.

[Trial Judge]: Have you discussed this matter with your lawyers, namely, waiving a jury trial?

[Petitioner]: Yes, sir.

[Trial Judge]: Do you have any questions about what I've asked you or told you up to this point in time?

[Petitioner]: No, sir.

[Trial Judge]: Do you want to further discuss anything with your lawyers, with reference to waiving a jury trial?

[Petitioner]: No, sir.

[Trial Judge]: Now, you have stated that you wish to waive your right to a jury trial. Are you certain and do you positively state that this decision is made freely, intelligently, and voluntarily by you?

[Petitioner]: Yes, sir.

[Trial Judge]: Very well.

[Trial Judge]: The Court finds the defendant has knowingly and voluntarily waived his right to a jury trial; directs that the record reflect those findings.

(Emphasis added).

At trial, neither party disputed that Winters was complicit in his father's death. Defense counsel, in her opening statement, expressed that there were "two issues for the Court to decide in this case . . . the degree of guilt [2] . . . [and] whether he meets the criteria for not criminally responsible or not." Both parties presented expert testimony as to Petitioner's mental health status and whether he was criminally responsible. The State put forward evidence to suggest that the murder was premeditated and that Winters was aware that what he did was wrong. In support of his not criminally responsible defense, Petitioner called as a witness a psychiatrist who testified that Petitioner suffered from mental disorders, including schizophrenia, and as a result lacked the substantial capacity both to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law. After hearing the evidence, the trial judge determined that the evidence was "in equipoise" as to Winters's criminal

---

2. More specifically, defense counsel noted that the question of degree of guilty was "[w]hether this is a case of first-degree murder, second-degree murder[,] or manslaughter."

responsibility and therefore Petitioner failed to demonstrate, by a preponderance of evidence, that he was not criminally responsible. Winters was subsequently convicted of first degree murder and sentenced to life imprisonment.

Petitioner appealed his conviction to the Court of Special Appeals. In that court, Winters asserted, among other arguments, that his waiver of the right to a jury trial was not knowing and voluntary. As a basis for that contention, Winters stated that he was misinformed by the trial judge about the standard of proof for entering a not criminally responsible plea and that the trial judge failed to distinguish between a trial on the issue of guilt and not criminally responsible. Winters further argued that his waiver was invalid because the trial judge failed to inform him of a possibility of a full acquittal.

The Court of Special Appeals affirmed the conviction in an unreported opinion. The intermediate appellate court, relying on *State v. Marsh,* 337 Md. 528, 654 A.2d 1318 (1995), concluded that the trial court had no obligation to inform the Petitioner about the standard of proof for a not criminally responsible defense or "to distinguish between guilt or innocence or acquittal for the trial and the [not criminally responsible] determination." The Court of Special Appeals also concluded that the trial court was under no obligation to inform him about the possibility of being acquitted. Finally, relying upon its interpretation of our decisions in *Thanos v. State,* 330 Md. 77, 622 A.2d 727 (1993), and *Morales v. State,* 325 Md. 330, 600 A.2d 851 (1992), and its own opinion in *Byrd v. State,* 98 Md.App. 627, 634 A.2d 988 (1993), the intermediate appellate court determined that "[e]ven if acquittal was not mentioned clearly enough, such error was harmless." Therefore, the Court of Special Appeals held that, under the totality of the circumstances, Petitioner made a knowing and voluntary waiver. On November 16, 2012, we granted *certiorari,* 429 Md. 303, 55 A.3d 906 (2012), to address:

Where a criminal defendant enters pleas of not guilty and not criminally responsible, is a waiver of jury trial rendered invalid where the judge during the waiver colloquy affirma-

tively misadvises the accused concerning the defense of not criminally responsible? [3]

## Discussion

█ This case presents the issue of whether a trial judge ensured that a criminal defendant's waiver of his right to be tried by a jury was knowing and voluntary where, after providing the defendant with "some knowledge" of the jury trial right, the trial judge also provided the defendant with erroneous information during the waiver colloquy. Upon review, we conclude that the trial judge erred in accepting the waiver as valid.

Petitioner argues that, among other things, the trial judge provided "erroneous advice," specifically about the standard of proof and the procedure for determining whether a defendant was not criminally responsible. Winters further asserts that the trial judge "omitted important information from the advice given[,]" namely that, in a jury trial, acquittal was a possible outcome. Petitioner, therefore, argues that the waiver of his right to be tried by a jury was not a knowing waiver and this Court should reverse the judgment of the Court of Special Appeals.

The State responds by pointing out that Petitioner does not assert that he relied upon the misinformation or that, but for the misinformation, he would not have waived his jury trial right. The State further asserts that pursuant to our decision in *Marsh*, the trial judge was not required to discuss the not criminally responsible defense, and because the information was extraneous it had no bearing on whether Winters's waiver of a jury trial was knowing and voluntary. Finally, the State argues that the trial judge's advice was not necessarily incorrect and, even if it was, reversal is not required because

---

**3.** In his Petition for Writ of Certiorari, Winters also advanced a question about whether his sentence constituted cruel and unusual punishment under the federal and Maryland Constitutions. This Court, however, granted *certiorari* only on the issue of Winters's waiver of his jury trial right.

Winters was represented by counsel and there is no clear indication in the record that the erroneous advice influenced Winters's decision to "elect a bench trial."

 A criminal defendant's right to a jury trial, in a qualifying criminal case, is guaranteed by both the federal and Maryland Constitutions. *See Boulden v. State*, 414 Md. 284, 293–94, 995 A.2d 268, 273 (2010); *see also* U.S. Const. amend. VI, XIV § 1; Md. Decl. of Rts. art. 5, 21, 24; *Duncan v. Louisiana*, 391 U.S. 145, 154, 88 S.Ct. 1444, 1450, 20 L.Ed.2d 491, 498–99 (1968). A defendant, however, may elect to waive his or her right to a jury trial and instead be tried in a bench trial. *See Boulden*, 414 Md. at 294, 995 A.2d at 273.

Maryland Rule 4–246 governs the waiver of a jury trial in a criminal case in a Maryland circuit court. *See Valonis v. State*, 431 Md. 551, 561, 66 A.3d 661, 666–67 (2013); *Boulden*, 414 Md. at 294, 995 A.2d at 274; *State v. Hall*, 321 Md. 178, 181, 582 A.2d 507, 508 (1990). Rule 4–246 provides that a defendant alone may waive a jury trial and sets forth the procedure for the court to accept the waiver. *See Valonis*, 431 Md. at 560, 66 A.3d at 666. Rule 4–246(a) provides that a defendant shall be tried by a jury, unless the right is waived pursuant to Rule 4–246(b). Rule 4–246(b) specifically provides:

> A defendant may waive the right to a trial by jury at any time before the commencement of trial. The court may not accept the waiver until, after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that the waiver is made knowingly and voluntarily.

 It is the ultimate responsibility of the trial court to *ensure* that the defendant makes a knowing and voluntary waiver. *See Abeokuto v. State*, 391 Md. 289, 317, 893 A.2d 1018, 1034 (2006) (citing *Martinez v. State*, 309 Md. 124, 133 n. 9, 522 A.2d 950, 954 n. 9 (1987)). The Committee Note that accompanies Rule 4–246(b) indicates that "[i]n determining

whether a waiver is *knowing,* the court should seek to ensure that the defendant understands [a list of information about a jury trial and the consequences of waiving the right to a jury trial]." (Emphasis in original). "Although Rule 4–246 provides the procedures for waiver of the right to trial by jury, the ultimate inquiry regarding the validity of a waiver is whether there has been an intentional relinquishment or abandonment of a known right or privilege." *Boulden,* 414 Md. at 295, 995 A.2d at 274 (quotations omitted) (citations omitted). Therefore, notwithstanding the fact that the trial judge "need not recite any fixed incantation," *Walker v. State,* 406 Md. 369, 378, 958 A.2d 915, 920 (2008), the trial judge is charged with "ensur[ing] that the record demonstrates an intentional relinquishment of a known right," *Boulden,* 414 Md. at 295, 995 A.2d at 274.

In past cases where the record has not disclosed that the trial judge ensured that a defendant's waiver of a jury trial was knowing and voluntary, we have ordered a new trial. *Tibbs v. State,* 323 Md. 28, 31–32, 590 A.2d 550, 551–52 (1991) (ordering a new trial where the record did not indicate that there was a knowing and voluntary waiver); *Martinez,* 309 Md. at 136, 522 A.2d at 956 (ordering a new trial when the record did not indicate that the waiver was voluntary). Therefore, trial courts are encouraged to "engage persons electing court trials in a dialogue as detailed as time, resources and circumstances permit so as to insulate jury trial waivers from successful direct or collateral attack." *Dortch v. State,* 290 Md. 229, 236, 428 A.2d 1220, 1224 (1981).

Whether a defendant's waiver of his or her jury trial right is valid "depends upon the facts and circumstances of each case." *Hall,* 321 Md. at 182, 582 A.2d at 509. Therefore, on review, we consider the "totality of circumstances." *Walker,* 406 Md. at 379, 958 A.2d at 920; *see Dortch,* 290 Md. at 235, 428 A.2d at 1223.

Examining the totality of the circumstances, we are persuaded that the trial judge failed to ensure that Petition-

er's waiver of his jury trial right was knowing. During the waiver colloquy, the trial judge informed Petitioner:

> And do you understand that for such a jury to convict you or to find you either criminally responsible or not criminally responsible, they must unanimously, all together, vote to convict you or find you criminally responsible or not criminally responsible upon which the evidence they feel proves same by a reason—beyond a reasonable doubt? Do you understand that?

As Winters argues, this advisement is misleading on multiple grounds. Most critical to the waiver of Winters's right to a jury trial is that the instruction incorrectly indicated to Winters that when proving that he was not criminally responsible, he would have to do so beyond a reasonable doubt. Under Maryland law, once the State has proven that a defendant is guilty of the offenses charged, the defendant has the burden of proving *by a preponderance of the evidence* that he or she is not criminally responsible for the crime. *See* CP § 3–110(c); CP § 3–110(b). The trial judge's misstatement may have misled Winters to believe that the task of proving that he was not criminally responsible in a jury trial would be a more difficult task than it actually is under Maryland law. This makes a jury trial appear less attractive and would reasonably influence Winters's decision to waive his right.

There is a significant difference between proving a fact beyond a reasonable doubt and proving a fact by a preponderance of evidence. In *Coleman v. Anne Arundel Cnty. Police Dept.*, 369 Md. 108, 797 A.2d 770 (2002), this Court cited to the definitions of reasonable doubt and preponderance of the evidence articulated in the Maryland Pattern Jury Instructions. Specifically, "[p]roof beyond a reasonable doubt requires such proof as would convince [a person] of the truth of a fact to the extent that [he or she] would be willing to act upon such belief without reservation in an important matter in [his or her] own business or personal affairs . . . [,]" and "[t]o prove by a preponderance of the evidence means to prove that something is more likely so than not so." *Coleman*, 369 Md. at 125–26 n. 16, 797 A.2d at 781 n. 16. *See also Ruffin v. State*,

394 Md. 355, 373, 906 A.2d 360, 371 (2006) ("We hold that in every criminal jury trial, the trial court is required to instruct the jury on the presumption of innocence and the reasonable doubt standard of proof which closely adheres to MPJI–Cr 2:02. Deviations in substance will not be tolerated."); *Wills v. State*, 329 Md. 370, 383–84, 620 A.2d 295, 301–02 (1993) (expressing support for the definition of reasonable doubt articulated in the Maryland Pattern Jury Instruction 2:02 for criminal law).

In addition to erroneously advising Winters that he would be required to unanimously convince the jurors beyond a reasonable doubt that he was not criminally responsible, the trial judge also informed Petitioner during the colloquy that a jury trial "is a trial by a jury of 12 persons. . . ." Thus, Petitioner was presented with the prospect of being required to prove to all twelve jurors that he was not criminally responsible to the extent that every one of the twelve jurors "would be willing to act upon such belief without reservation in an important matter in [his or her] own business or personal affairs." *Coleman*, 369 Md. at 126 n. 16, 797 A.2d at 781 n. 16 (quoting MPJI–Cr 2:02). Under the proper standard of preponderance of the evidence, Petitioner need only prove that it "is more likely so than not so" that he was not criminally responsible, if convicted of the underlying crime. *Coleman*, 369 Md. at 125 n. 16, 797 A.2d at 781 n. 16 (quoting MPJI–Cr 1:7 (recodified as MPJI–Cr 5:05)). Thus, it is reasonable that an instruction to Winters that a jury trial would require him to convince all twelve jurors beyond a reasonable doubt that he was not criminally responsible would make a jury trial less attractive than it actually is pursuant to Maryland law.

■ By giving Winters erroneous information that made exercising Winters's constitutional right to a jury trial less attractive, the trial judge may have misled Petitioner and, thereby, influenced his decision to waive his right to a jury trial. Although Winters was represented, there is no indication on the record that the trial judge, defense counsel, or anyone else corrected the misleading advice. Therefore, un-

der the circumstances of the present case, the trial judge failed to ensure that Winters's waiver of his jury trial was knowing, and we shall reverse the judgment of conviction. *See Morales v. State*, 325 Md. 330, 335, 600 A.2d 851, 853 (1992) ("Because the judge may have misled [the defendant] regarding impeachment by prior convictions and, thereby, influenced him not to testify, we must reverse.").[4]

In many ways, this case is similar to *Morales*. In that case, a defendant challenged his conviction on the grounds that, as a result of erroneous advice from the trial judge about the possibility that the defendant's past conviction could be used to impeach him on cross-examination, his waiver of his right to testify was not valid. *Morales*, 325 Md. at 333–35, 600 A.2d at 852. During trial in *Morales*, the trial judge "advised [the defendant] of his constitutional right to take the witness stand and testify in his own defense or not to testify and remain silent." *Morales*, 325 Md. at 333, 600 A.2d at 852. We held, however, that the waiver was unknowing and invalid. *Morales*, 325 Md. at 339–40, 600 A.2d at 855. When instructing the defendant about his right to testify, the trial judge, although he was under no obligation to do so, "went further and told the defendant that if he decided to take the stand he would risk being impeached by the State with evidence of prior criminal convictions." *Morales*, 325 Md. at 336, 600 A.2d

---

4. The State argues that during his competency hearing six months before trial, Winters evidenced that he understood the basic role of a judge and a jury and that it was his decision whether he would be tried by a jury or in a bench trial. As discussed below, although having "some knowledge" of a jury trial is necessary for a knowing waiver, *see Walker*, 406 Md. at 378, 958 A.2d at 920, where the trial judge gives erroneous advice that would reasonably influence the decision, which is not corrected before the right to a jury is waived, the trial judge cannot ensure that the waiver is knowing. The State further asserts that Winters indicated a desire to proceed with a bench trial before the colloquy. A criminal defendant is not bound by an expression of his or her desire to waive the right to a jury made before the colloquy. If he or she were, it would undermine the importance of the colloquy as a procedure to ensure that the defendant is offering a knowing waiver. *Cf. Valonis v. State*, 431 Md. 551, 567, 66 A.3d 661, 670 (2013) ("We note that with regard to the examination, the trial judge is required to do more than merely go through the motions.").

at 854. This Court concluded that the trial judge incorrectly implied that all of the defendant's prior convictions could be used to impeach him, when in fact, some prior convictions would not have been admissible as impeachment evidence. *Morales*, 325 Md. at 338–39, 600 A.2d at 855. We held:

> [W]hile the trial court was not required to further inform [the defendant] that he could be impeached by his prior convictions if he took the witness stand, since the trial judge elected to do so, he should have done so correctly. Because the judge may have misled [the defendant] regarding impeachment by prior convictions and, thereby, influenced him not to testify, we must reverse.

*Morales*, 325 Md. at 335, 600 A.2d at 853.

Much like in *Morales*, the present case concerns a situation where we require that the trial judge ensure that the defendant is adequately informed about the constitutional right he is waiving. In *Morales*, we determined that the trial judge had an obligation to inform an unrepresented criminal defendant of his constitutional right to testify or to remain silent. Despite the trial judge "begging [the defendant] to get a lawyer[,]" the defendant chose to proceed without counsel. *Morales*, 325 Md. at 332–33, 600 A.2d at 852. We concluded that although "the trial court is not required to advise *represented* defendants of their right to remain silent or testify . . . [a] trial court *is* required to inform an *unrepresented* defendant of the constitutional right to remain silent or to testify." *Morales*, 325 Md. at 335–36, 600 A.2d at 853–54 (emphasis added); *see also Tilghman v. State*, 117 Md.App. 542, 555 n. 5, 701 A.2d 847, 853 n. 5 (1997) ("Obviously, an unrepresented defendant's waiver of his right to testify or his right to remain silent will be made on the record, in open court, as it must be obtained by the court.")

In the present case, Winters was represented by counsel. Despite this fact, Rule 4–246(b) imposes a duty upon a trial judge, regardless of whether the defendant is represented, to ensure that the defendant is "examined" and informed about the right to a jury trial on the record. *See Valonis*, 431 Md.

at 566, 568, 66 A.3d at 670, 671 ("The Rule [4–246] dictates that there must be an examination of the defendant on the record in open court[,]" and "[Rule 4–246(b)'s] provisions specifying that the defendant be examined on the record regarding his or her waiver of the right to a jury trial . . . [is] subject to strict compliance."); Rule 4–246 ("The court may not accept the waiver until, after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that the waiver is made knowingly and voluntarily."). In *Tibbs v. State*, 323 Md. 28, 590 A.2d 550 (1991) we addressed whether a represented defendant validly waived his right to a jury trial. Although the defendant was represented, we held that because the record did not indicate that the defendant was provided with sufficient information, he did not knowingly waive his right to a jury trial. *Tibbs*, 323 Md. at 30–32, 590 A.2d at 551–52.

Additionally, as in *Morales*, we conclude that in the present case, the misstatement by the trial judge makes the waiver unknowing, despite that: (1) without the erroneous statement, there would have been sufficient information for a knowing waiver; and (2) the trial judge was under no obligation to give the erroneous advice. In *Morales*, the trial judge "advised [the defendant] of his right to remain silent and explained that if he exercised this right no inference of guilt could be drawn from his refusal." *Morales*, 325 Md. at 336, 600 A.2d at 854. This Court, therefore, concluded that "the trial court provided the defendant with sufficient information necessary to waive his constitutional right." *Id.* We also noted in that case that the trial judge "was not required to inform [the defendant] of the possibility of impeachment," *Morales*, 325 Md. at 336–37, 600 A.2d at 854, but held that because the trial judge elected to inform the defendant that he could be impeached by prior convictions, even when the trial judge was under no obligation to do so, the trial judge "should have done so correctly." *Morales*, 325 Md. at 335, 600 A.2d at 853.

In the present case, we likewise conclude that the trial judge provided Petitioner with sufficient information for there to be a knowing waiver. We have held in past cases that before accepting a waiver of the right to a jury trial, the trial judge must ensure "that the defendant has some information regarding the nature of a jury trial." *See Valonis,* 431 Md. at 567, 66 A.3d at 670. We have made clear, however, that a criminal defendant need not be informed of all aspects of the right to a jury. *See Hall,* 321 Md. at 183, 582 A.2d at 509–10 (concluding that the jury waiver colloquy provided adequate knowledge of the jury trial despite the fact that the trial court never informed the defendant about, among other things, the jury selection process). In the case at bar, the trial court provided Winters with "some knowledge" of a jury trial waiver. Along with providing other advice, the trial judge explained that the jury was made up of twelve persons selected at random from the citizens of Montgomery County, that Winters's attorney would play a role in jury selection, that the jury would determine his guilt or innocence if Petitioner did not waive the jury trial, and that the judge would try the case if the jury was waived.

We also note that the trial judge was under no obligation in the present case to provide Winters with information about the standard of proof for a not criminally responsible plea during the jury trial waiver colloquy. *See Marsh,* 337 Md. at 533, 536–40, 654 A.2d at 1320, 1322–24 ("We hold that a trial court may accept the waiver of [a] jury trial in [a not criminally responsible] case without giving any advice to the defendant relating specifically to the [not criminally responsible] defense."). As in *Morales,* however, because the trial judge elected to provide the defendant with information, even when he was under no obligation to do so, the trial judge "should have done so correctly." *Morales,* 325 Md. at 335, 600 A.2d at 853; *cf. Martinez,* 309 Md. at 136, 522 A.2d at 956 (noting that although a trial judge is "not required to ask whether jury trial waivers are the result of threats, promises or inducements," if the judge decides to ask during a jury trial waiver colloquy, he or she is not "free to ignore the answer").

In its brief, the State argues that *Morales* is inapplicable to the present case. In support, the State seeks to distinguish *Morales* by contending that the record in *Morales* suggested strongly that the defendant relied upon the erroneous advice, whereas, in the present case, there is no clear indication that Winters relied upon the trial judge's misstatement when deciding to waive his right to a jury. The State further asserts that *Morales* is distinguishable because unlike the defendant in *Morales*, Winters was represented by counsel. We reject both contentions.

First, while we observed that the record in *Morales* indicated that "[the defendant] apparently changed his decision to testify based on the trial court's incorrect implication that all of his prior convictions could be used to impeach him," 325 Md. at 339, 600 A.2d at 855, we also concluded that "[b]ecause the judge *may* have misled [the defendant] regarding impeachment by prior convictions and, thereby, influenced him not to testify, we must reverse." 325 Md. at 335, 600 A.2d at 853 (emphasis added). In observing that the defendant in *Morales* "apparently changed his decision to testify based on the trial court's incorrect implication that all of his prior convictions could be used to impeach him," we applied our standard, *i.e.,* that the erroneous advice "may have misled [the defendant] regarding impeachment by prior convictions and, thereby, influenced him not to testify. . . ." *Morales*, 325 Md. at 339, 335, 600 A.2d at 853. In short, *Morales* does not stand for the proposition that there must be clear indications of reliance on erroneous advice for those misstatements to render a waiver unknowing.

Second, the importance of the defendant's lack of counsel in *Morales* was that, as noted above, a trial judge "is required to inform an unrepresented defendant of the constitutional *right to remain silent or to testify* [,]" while "the trial court is not required to advise represented defendants of their *right to remain silent or testify*." *Morales*, 325 Md. at 335–36, 600 A.2d at 853–54 (emphasis added). In other words, because the defendant in *Morales* was unrepresented, we held that it was necessary for the trial judge to inform the defendant of

his right to remain silent or testify. As noted above, with respect to a jury trial waiver, regardless of whether a defendant is represented, a trial judge has a duty to ensure that a defendant has a basis for a knowing waiver. *Valonis,* 431 Md. at 565, 66 A.3d at 669 (citations omitted) ("Rule 4–246 places the onus on the trial court to *ensure* that the defendant has elected a court or jury trial, and if the former, whether he or she has done so voluntarily and *knowingly.*" (Emphasis added)).

For a similar reason, we are unpersuaded by the State's argument that where erroneous or ambiguous advice is given to a represented defendant, reversal is only necessary if there is evidence in the record that the defendant relied upon the misstatements. In making that argument, the State relies on this Court's decisions in *Gilliam v. State,* 320 Md. 637, 579 A.2d 744 (1990), *Oken v. State,* 327 Md. 628, 612 A.2d 258 (1992), and *Thanos v. State,* 330 Md. 77, 622 A.2d 727 (1993) and the Court of Special Appeals's decisions in *Byrd v. State,* 98 Md.App. 627, 634 A.2d 988 (1993), *Brooks v. State,* 104 Md.App. 203, 655 A.2d 1311 (1995), and *Gregory v. State,* 189 Md.App. 20, 983 A.2d 542 (2009).

First, the reasoning in *Gilliam, Oken, Thanos*, and *Gregory,* upon which the State relies, is inapplicable to the present situation. In support of its argument that reversal is only required where there is clear evidence that a represented defendant was misled by erroneous advice, the State cites to the discussions in *Gilliam, Oken, Thanos*, and *Gregory* with regard to the defendants' rights to testify or remain silent. All four of those cases involved represented defendants. *See Gilliam,* 320 Md. at 652, 579 A.2d at 751; *Oken,* 327 Md. at 641, 612 A.2d at 264; *Thanos,* 330 Md. at 90, 622 A.2d at 733; *Gregory,* 189 Md.App. at 37, 983 A.2d at 552. In each of those cases, the defendant argued that his waiver of the right to testify or remain silent was unknowing because of a misstatement either by the trial judge or by defense counsel, which the trial judge failed to correct. *See Gilliam,* 320 Md. at 651, 579 A.2d at 751; *Oken,* 327 Md. at 636, 612 A.2d at 261–62; *Thanos,* 330 Md. at 90, 622 A.2d at 733; *Gregory,* 189 Md.App.

at 30, 983 A.2d at 548. Unlike *Morales*, in those cases, this Court and the Court of Special Appeals concluded that the misstatement did not render the waiver of the right to testify unknowing. *See Gilliam*, 320 Md. at 656, 579 A.2d at 753; *Oken*, 327 Md. at 641–42, 612 A.2d at 264; *Thanos*, 330 Md. at 92, 622 A.2d at 734; *Gregory*, 189 Md.App. at 37–38, 983 A.2d at 552.

The conclusions in *Gilliam*, *Oken*, *Thanos*, and *Gregory*, that the right to testify or remain silent was valid, however, explicitly relied in part on the fact that when a criminal defendant is represented there is no duty on the part of the trial judge to inform a defendant of his right to remain silent or testify. *See Gilliam*, 320 Md. at 652–53, 579 A.2d at 751; *Oken*, 327 Md. at 639, 612 A.2d at 263; *Thanos*, 330 Md. at 91–92, 622 A.2d at 733–34; Gregory, 189 Md.App. at 33, 983 A.2d at 549–50. The same is not true with respect to the right to a jury trial. As noted above in *Tibbs*, we concluded that the waiver of the represented defendant's jury trial right was not knowing. 323 Md. at 30–32, 590 A.2d at 551–52. Implicit in our holding was that, unlike with the right to testify or remain silent in *Gilliam*, *Oken*, and *Thanos*, the trial judge has an affirmative duty to ensure that a defendant, represented or not, is provided some knowledge of the jury trial right. *Compare Hall*, 321 Md. at 182, 582 A.2d at 509 ("[B]efore the accused may elect a court trial, a waiver inquiry must be conducted *on the record* in open court and the questioner must examine *the defendant*, for only he can waive his right to a jury trial" (quotation omitted) (emphasis in original)); *with Tilghman*, 117 Md.App. at 555 n. 5, 701 A.2d at 853 n. 5 ("There is no provision in the Maryland Rules requiring that a defendant's waiver of his constitutional rights to testify or to remain silent be obtained in a prescribed fashion, be placed on the record, or be made in open court."). Thus, although Winters was represented, the State's reliance on *Gilliam*, *Oken*, *Thanos*, and *Gregory*—cases where the trial judge had no obligation to ensure that the defendants were provided with knowledge of the right to remain silent or testify before waiving the right—is unpersuasive.

In the context of a waiver of a jury trial for sentencing, we stated in *Abeokuto* that "[w]hile the presence of an attorney to discuss the waiver election tends to show that a defendant has made a knowing waiver, that fact *will not mitigate an inaccurate or incomplete court instruction* on the jury sentencing right." *Abeokuto*, 391 Md. at 348 n. 21, 893 A.2d at 1052 n. 21 (emphasis added). Although the presence of a defense counsel is one factor when examining the totality of the circumstances, it is not dispositive. In the present case, Winters was given erroneous advice that may have misled him and influenced his decision to waive his jury trial right. The record does not indicate that defense counsel, the trial judge, or anyone else ever corrected the misstatement before Petitioner waived his constitutional right to a jury trial. Clearly, the mere presence of defense counsel does not mitigate the inaccurate court instruction.

Similarly, the State's reliance on *Byrd* is misplaced. 98 Md.App. 627, 634 A.2d 988. In that case, the defendant argued that his waiver of the right to a jury was invalid because the trial judge erroneously advised the defendant that the maximum sentence he faced for his crime was five years, when, because of his status as a subsequent offender, he faced the risk of a ten-year sentence. *Byrd*, 98 Md.App. at 629–30, 634 A.2d at 990. The intermediate appellate court, however, determined that the trial judge's misleading advisement "had *no bearing* on [the defendant's] waiver of the right to a jury trial [because defendant] was not pleading guilty." *Byrd*, 98 Md.App. at 631, 634 A.2d at 990 (emphasis added). In the present case, the trial judge erroneously advised Winters what the standard of proof would be when proving to a *jury* that he was not criminally responsible. This directly bears on the decision to elect or waive the right to a jury. Therefore, *Byrd*, a case where the misstatement had no bearing on the defendant's jury trial waiver, is inapplicable to the present case.

In *Byrd*, the intermediate appellate court further stated that "[a]lthough the Court of Appeals decried misleading advisement by the trial court where the defendant was unrep-

resented [in *Morales* ], under these circumstances where [the defendant] was represented by competent counsel, we are not persuaded that *Morales* is controlling." *Byrd*, 98 Md.App. at 630–31, 634 A.2d at 990. To the extent that this statement can be read to indicate that the reasoning in *Morales* is limited only to cases where the waiver of any right was made by an unrepresented defendant, it is disavowed.

Finally, in *Brooks*, the intermediate appellate court cited our opinions in *Gilliam*, *Thanos*, *Oken*, and *Morales* for the proposition that this Court "has frequently stated that an ambiguous statement made by the [trial judge] or defense counsel during the waiver inquiry will not provide a basis for appellate relief absent some clear indication that the defendant was misled by the ambiguity." *Brooks*, 104 Md.App. at 231–32, 655 A.2d at 1324–25. At a minimum, as it applies to the waiver of the right to a jury trial, this statement is disavowed. As this Court expressed concerning the right to a jury trial in *Countess v. State*, 286 Md. 444, 408 A.2d 1302 (1979), "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and do not presume acquiescence in the loss of them." *Countess*, 286 Md. at 449, 408 A.2d at 1304.[5] Maryland law requires that before accepting a waiver of the right to a jury trial, the trial judge *ensure* that the waiver is knowing and voluntary. *See Valonis*, 431 Md. at 565, 66 A.3d at 669; *Abeokuto*, 391 Md. at 317, 893 A.2d at 1034; *Martinez*, 309 Md. at 133 n. 9, 522 A.2d at 954 n. 9. We do not presume erroneous advice that reasonably may have influenced the decision to proceed with a jury trial or bench trial had no effect on the waiver, especially when that advice is given during a colloquy to ensure that the waiver is knowing and voluntary.

---

**5.** In *State v. Bell*, 351 Md. 709, 720 A.2d 311 (1998), we expressed that the rule governing the waiver of the right to a jury had changed, and a knowing waiver of the right no longer required that the defendant have "full knowledge" about the right as it did at the time this Court issued its decision in *Countess*. 351 Md. at 716–17, 720 A.2d at 315. We did not indicate, however, that the change in the rule created a presumption that the right is waived.

As noted above, the Court of Special Appeals, relying upon *State v. Marsh*, held that under the totality of the circumstances, Winters made a knowing and voluntary waiver because the trial judge had no obligation to inform him about the standard of proof or to "distinguish between guilt or innocence or acquittal for the trial and the [not criminally responsible] determination." We conclude, however, that *Marsh* is inapplicable to the present case.

In *Marsh*, we held that "a trial court may accept a waiver of jury trial in [a not criminally responsible] case without giving any advice to the defendant relating specifically to the [not criminally responsible] defense." *Marsh*, 337 Md. at 533, 654 A.2d at 1320. More importantly for the present case, we also determined in *Marsh* that the trial judge did not erroneously inform the defendant that a not criminally responsible defense had to be proven beyond a reasonable doubt. *Marsh*, 337 Md. at 539–40, 654 A.2d at 1324. We noted in that case that the mention of reasonable doubt came in two instructions, that "a court trial, of course, means that the judge listens to all the facts and evidence in the case and decides whether you're *guilty beyond a reasonable doubt* [,]" and that in a jury trial, twelve jurors *"would have to decide your guilt by the same standard a judge applies and that standard again is beyond a reasonable doubt."* *Marsh*, 337 Md. at 540, 654 A.2d at 1324 (emphasis in original). Although the defendant had entered a plea of not criminally responsible, we concluded that "[t]hese statements clearly refer only to a finding of guilt, and not to a determination of criminal responsibility. Nothing in these remarks is inaccurate or misleading." *Id.* In the present case, Winters was told by the trial judge, "for such a jury to convict you or to find you either criminally responsible or not criminally responsible, they must unanimously, all together, *vote to convict you or find you criminally responsible or not criminally responsible upon which the evidence they feel proves same by a reason—beyond a reasonable doubt* [.]" (Emphasis added). This instruction, unlike the one in *Marsh*, explicitly indicates and reasonably may have misled Winters to believe

that the standard of proof for a not criminally responsible defense is beyond a reasonable doubt.

Recently in *Valonis v. State*, we stated "[i]n the case of a jury trial waiver, Rule 4–246 places the onus on the trial court to *ensure* that the defendant has elected a court or jury trial, and if the former, whether he or she has done so voluntarily and *knowingly.*" *Valonis,* 431 Md. at 565, 66 A.3d at 669 (citations omitted) (emphasis added). We further observed that "[b]y discussing the applicable provisions, and recording the defendant's responses to those statements, that is one practical way for the court to reasonably ensure that the defendant's waiver is knowing." *Valonis,* 431 Md. at 567, 66 A.3d at 670. It logically follows that if discussing applicable provisions and recording a defendant's responses is a practical way of ensuring a knowing waiver, giving an incorrect advisement that may have misled a defendant and thereby influenced his or her decision to waive the right to a jury trial prevents a trial judge from ensuring the validity of the waiver. In the present case, the trial judge's misstatement may have misled Winters to believe that a jury trial was less appealing than it actually was, thereby influencing his decision to exercise or waive the constitutional right to a jury trial. Therefore, we hold that the trial judge did not ensure that Winters's waiver was knowing.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.**

McDONALD, J., concurs.

BARBERA, C.J., HARRELL and ADKINS, JJ., dissent.

McDONALD, J., concurring.

I join the Court's opinion. I note that the Majority opinion cites *Valonis v. State*, 431 Md. 551, 66 A.3d 661 (2013) in

several places for various general statements made in that opinion with which I agree. Indeed, for the most part they are propositions not open to disagreement, such as the history of Rule 4–246 and purpose of the colloquy it requires for a valid waiver. I write only to point out the difference between this case and the two cases decided in *Valonis*. In my view, those differences warrant reversal and retrial here but not, as I indicated in a dissent in *Valonis*, in the latter cases.

As the Majority opinion explains well, the purpose of the colloquy under Rule 4–246(b) is to ensure on the record that the defendant is making a knowing and voluntary election to forgo a jury trial in favor of a bench trial. Under the rule, the defendant is questioned, either by counsel or the court, on matters going to the defendant's knowledge about that choice and personal decision to make it. The trial court, of course, is not to proceed with a bench trial unless it finds that a defendant freely and voluntarily waives the right to a jury trial and ideally, as the rule indicates, it should recite an explicit statement on the record documenting that finding.

In the two cases under consideration in *Valonis*, the defendants each engaged in thorough colloquies with counsel that provided the defendants with accurate information with which to make a choice between a bench and jury trial and that established that the choice was theirs to make; in one case, the judge specially intervened to ensure that the jury trial waiver was knowing and voluntary. In each case, however, the trial court neglected to document the conclusion that it had obviously made. This Court found that error to be fatal, reversed the convictions, and sent the cases back for new trials. As I indicated in dissent in those cases, it seemed to me that the purpose of the Rule 4–246(b) had been well-served and that reversal was unnecessary in light of Rule 1–201. *Valonis*, 431 Md. at 570–76, 66 A.3d 661.

This case is quite different. In this case, the trial court engaged in a similar colloquy and made an explicit finding that the defendant had knowingly and voluntarily waived a jury trial in language that no one could fault under Rule 4–246(b).

But the judge undermined that finding by giving Mr. Winters serious misinformation concerning the right Mr. Winters was waiving when the judge told him that he would have to convince all twelve jurors *beyond a reasonable doubt* of a defense of not criminally responsible. No doubt the mistake was an innocent one. But it was hardly harmless. The court may have given Mr. Winters the same misinformation concerning the burden of proof he would face in a bench trial, but that did not negate the misinformation concerning a jury trial. Few would view the prospect of persuading 12 people under that formidable standard[1] as attractive as persuading one. That is perhaps one reason that the vast majority of defendants opt for a jury trial, as the prosecution alone normally bears that burden.

I thus agree with the Court's decision today which focuses on the substance of the colloquy and not simply on its documentation.

HARRELL, J., dissenting, which BARBERA, C.J., and ADKINS, J., join.

Because I am unpersuaded by Winters' arguments and this record that he was misled by the trial judge's gaff during the waiver qualification exchange, I would affirm the judgment of the Court of Special Appeals. Although I agree with the Majority opinion that the trial judge was mistaken in describing what Winters' burden of proof would have been in a jury trial to put in play his Not Criminally Responsible ("NCR") defense (Maj. Op. at 537–38, 76 A.3d at 991–92), I do not accept the Majority's additional point that Winters may have been misled independently when the trial judge communicated to Winters that he would have to meet a "beyond a reasonable doubt" standard as to each of the twelve members of a jury (Maj. op. at 538–39, 76 A.3d at 992–93). The latter is not a separate and independent mis-statement, but rather is subsumed in the former mention of the wrong standard of proof

---

1. A defendant's calculus might well be different under the lesser, correctly-stated standard of proof.

generally. Nevertheless, I fail to see how what the trial judge said in this regard made "a jury trial less attractive" (Maj. op. at 539, 76 A.3d at 992–93) than a bench trial on this record.

The record does not disclose that Winters was told anything that would distinguish or suggest that the burden of proof in establishing an NCR defense was different between a jury or bench trial. Thus, for all Winters knew at the time of his jury trial waiver colloquy, apparently, "beyond a reasonable doubt" was the prevailing standard for both modalities of trial. There being no basis before him to distinguish between the modalities in making a choice on the ground of burden of proof, how the Majority opinion can maintain that Winters was misled (or likely misled) into believing that a jury trial was less attractive than a bench trial eludes me. The error was harmless beyond a reasonable doubt. The error did not contribute to Winter's choice of a bench trial and waiver of a jury trial.

I would affirm.

Chief Judge BARBERA and Judge ADKINS authorize me to state that they share the views expressed here and join this dissent.