REPORTED
IN THE COURT OF SPECIAL APPEALS
No.  2612
September Term, 2012

OTTUS SAVOY

v.

STATE OF MARYLAND

Zarnoch,
Graeff,
Raker, Irma S.
        (Retired, specially assigned),

JJ.*

Opinion by Raker, J.

Filed: July 31, 2014

*Reed, Michael W., J., did not participate in the
Court's decision to report this opinion pursuant to
Md. Rule 8-605.1.

Ottus Savoy, appellant, was convicted in the Circuit Court for Baltimore City of second degree murder and use of a handgun in the commission of a crime of violence. Before this Court he presents the following questions for our review:

> "1. Did the trial court err in admitting Appellant's statements to the police?
>
> 2. Did Appellant knowingly and intelligently [sic] waive the right to testify?
>
> 3. Did the trial court err in admitting into evidence photographic arrays which included a photograph of Appellant?"

We shall affirm.

I.

Appellant was indicted by the Grand Jury for Baltimore City with first degree murder, use of a handgun in the commission of a crime of violence, and wearing, carrying, and transporting a handgun.[1] He proceeded to trial before a jury in the Circuit Court for Baltimore City.

During the evening of August 1, 2011, at approximately 11:15 p.m., Sean Ames[2] was shot and killed in Baltimore City outside of the residence of Troy Harkless and his then-girlfriend Amber Buschman. Appellant had been staying at the residence temporarily. According to the two eyewitnesses at the scene, Janice Jay and Ms. Buschman, appellant

---

[1]The State *nolle prossed* the wearing, carrying, and transporting a handgun charge.

[2]Although the victim is sometime referred to as Mr. Eames in the transcript, we shall refer to him as Sean Ames.

emerged from a taxi and demanded to know why Mr. Ames was on the steps. When Mr. Ames replied that he was selling DVDs and awaiting Mr. Harkless' return, appellant ran into the house, retrieved a handgun, and returned outside. Appellant then shot Mr. Ames on the steps, and when Mr. Ames attempted to flee, appellant chased him up the street and shot him several more times, killing him. The police recovered the gun from the roof of a garage adjoining Mr. Harkless' residence.

Although the defense called no witnesses in the case, the defense's theory of the case was that Mr. Harkless, not appellant, killed Mr. Ames. Mr. Harkless testified for the State that he had arranged for Mr. Ames to sell him DVDs outside his residence. Mr. Harkless then walked to a neighborhood Seven-Eleven. Upon returning, he learned that Mr. Ames had been killed. Mr. Harkless found the murder weapon, which was his own gun wrapped in a towel, and tossed it from the window onto a nearby garage roof out of fear that he would be linked to the homicide. Detectives testified that Mr. Harkless provided them with a receipt from the Seven-Eleven and that the surveillance video maintained by the store depicted Mr. Harkless before the murder occurred. It was unclear whether Mr. Harkless had sufficient time to travel from the store to his home to perpetrate the killing.

On August 25, 2011, the police arrested appellant and brought him to the homicide unit. The police interviewed him at two different times. Detective Moynihan testified that when appellant was questioned after his arrest, he wrote on a piece of paper, "If you all can get me twenty to twenty-five years with a lawyer I will take the plea." When told by a

2

detective that they would need more information to take to the State's Attorney, appellant

replied, "The blank[3] flinched, act[ed] like he was reaching. I will tell you all how the whole

situation happened in front of the State's attorney."

The court admitted, over defense objection, photo arrays in which Ms. Jay and Ms.

Buschman had identified appellant as the perpetrator, and Mr. Harkless had identified

appellant as a person he knew.

After the close of the State's case, the following colloquy took place between

appellant and defense counsel regarding appellant's right to testify:

> "[DEFENSE COUNSEL]: At this point in time the State has
> rested and the defense would choose whether or not it wants to
> put a case on or not. I do not believe we have any witnesses that
> we want to put on. So the question is do you want to testify or
> not, which you do not have to answer but I have to advise you
> that you have a right to testify. You have a right to remain
> silent. If you choose to remain silent I have asked this court
> already to give an instruction to this jury they cannot even
> consider the fact you chose to remain silent as evidence against
> you. They can't even discuss or talk about it and that will be the
> instruction that the Court will read to the jury at the end of
> instructions. If you choose to testify, you are giving up that
> Fifth Amendment right, all right, and you have a right to do that
> if you want but if you get up on the stand you can't just say one
> thing. If you get up on the stand and want to testify, then you're
> giving up that right and the State can ask you any questions
> about this case that they want to.
>
> *Also it's my understanding that you have a prior conviction with*
> *first degree assault. It's my understanding that this is an*
> *impeachable offense and if you get on the stand and testify, the*
> *State can ask you questions about that offense if they so desire*

---

[3] Detective Moynihan declined to read the offensive word used by appellant at trial.

3

*to try to show that you are somebody that should not be believed.* You do not have to testify. It's completely your choice, do you understand your choice?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: Do you understand your right to testify and your right not to testify?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: And it is my understanding that you would like to hold onto that and make that election tomorrow after you had enough time to digest this and figure this out; is that correct?

THE DEFENDANT: Yes."

At the next day's proceedings, trial counsel stated as follows: "Your Honor, I've spoken to my client, Mr. Savoy, and Mr. Savoy, at this time, would like to invoke his Fifth Amendment Right and not testify." Although the defense called no witnesses in the case, the defense's argument was that Mr. Harkless, not appellant, killed Mr. Ames.

The jury convicted appellant of second-degree murder and use of a handgun in the commission of a crime of violence. The court sentenced appellant to a term of incarceration of thirty years for second-degree murder and a consecutive term of incarceration of twenty years for the use of a handgun.

This timely appeal followed.

4

We turn first to appellant's request that we review for plain error the denial of his motion to suppress and the admission of his pre-trial statements to the police. Appellant argues that the trial court committed plain error in allowing the admission of the incriminating statements he made to the police because they were statements made in the context of settlement negotiations and appellant offered to plead guilty in return for a specified sentence. He argues plain error in the admissibility of his statements also because the detectives violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), in that the detectives failed to scrupulously honor his right to remain silent.

The State maintains that appellant's arguments regarding the suppression hearing were waived and precluded from plain error review. Particularly interesting is the State's argument that plain error review is not available when a defendant affirmatively waives issues subject to Rule 4-252, *i.e.*, mandatory motions to suppress. The State argues in the alternative that plain error review is unwarranted because appellant did not identify any clear and obvious error by the trial court. First, the State argues that Rule 5-410 is inapplicable to the admissibility of the statements at issue because that Rule applies only to plea discussions with an attorney for the prosecuting authority and it has no application to statements a defendant may have made to law enforcement alone. Second, as to the merits of the *Miranda* issue, the State argues that the detectives scrupulously honored appellant's initial invocation of the right to remain silent.

When reviewing the denial of a motion to suppress, we review the record of the suppression hearing, not the record of the trial. *Byndloss v. State*, 391 Md. 462, 477, 893 A.2d 1119, 1128 (2006). The following facts were adduced at the pre-trial suppression hearing.

Appellant was arrested on August 25, 2011, and the police interviewed him that day. Detective Moynihan conducted the interview, while a fellow detective was present as a witness. Detective Moynihan read appellant his *Miranda* warnings, *see Miranda*, 384 U.S. at 436, and appellant waived both his *Miranda* rights and his right to prompt presentment. During this phase of the interview, appellant mentioned that some members of a rock and roll band might be able to provide an alibi for him. Appellant then stated, "I'm finished talking." Detective Moynihan terminated the interview, and checked out the asserted alibi. The members of the rock and roll band provided no exculpatory information.

After two-and-one-half hours had passed, Detective Moynihan questioned appellant again, accompanied by the same detective. Detective Moynihan restated the *Miranda* warnings, appellant waived his *Miranda* rights and he agreed to speak with the detectives. Appellant asked for a piece of paper and wrote: "If you all can get me 20 to 25 years with a lawyer, I will take the plea." The other detective told appellant that they would need more information to take to the State's Attorney. Appellant replied, "The [blank] flinched, act[ed] like he was reaching. I will tell you all how the whole situation happened, in front of the State's attorney."

6

At the suppression hearing, appellant argued only that the statements were involuntary because they were the product of coercive tactics. In particular, appellant argued that he denied initially his involvement in the murder, but that the detectives continued to press him and intimidate him until he made the statements. The court rejected this argument and denied the motion to suppress, explaining as follows:

> "[W]hile there is a repetitive sort of stick-to-it-ness on the part of the detectives, they are not – they're unrelenting in returning to the issue.
>
> * * *
>
> And [appellant's] demeanor, as it's presented through the audiotape is, at least in the Court's opinion, is aggressive, assertive, not intimidated in any way, and combative.
>
> * * *
>
> [T]here's certainly nothing here, to the Court, that rises to a constitutional level where he should – any of these statements – any of them – should be suppressed, at this point, on that legal point. So your motion is denied[.]"

Before this court, appellant abandons the argument he made in the trial court that the statements were involuntary because of police coercion and instead argues that the statements were inadmissible because they were part of plea negotiations and taken in violation of *Miranda*. He states in his brief as follows:

> "Defense counsel argued that the statements were involuntary, and the hearing judge rejected that argument. Appellant now abandons that argument as nonviable, but respectfully requests that this Court exercise its discretion to recognize plain error

7

. . . upon two different theories: That the statements were inadmissible under Rule 5-410 as statements made in the course of plea negotiations, and that they were obtained through failure to 'scrupulously honor' [*see Michigan v. Mosely*, 423 U.S. 96 (1975)] Mr. Savoy's invocation of the right to remain silent."

He asks us to review the matter for plain error.

The State counters that appellant affirmatively waived these arguments by not presenting them at the suppression hearing, and therefore, plain error review is not available. The State argues alternatively that we should not review for plain error because appellant fails to identify any clear and obvious error by the court.

We shall consider appellant's appeal arguments separately because, as we shall explain *infra*, the standard of review of his Rule 5-410 plea negotiation argument is different from that applicable to his *Miranda* violation argument. We address his *Miranda* violation argument first. There is no dispute in this case that appellant did not preserve the issue for our review, and waived the arguments he is now raising. *See* Rule 8-131 and Rule 4-252. It is well established that, absent good cause, Rule 4-252[4] prohibits a criminal defendant from

---

[4]Rule 4-252 provides, in pertinent part, as follows:

"(a) Mandatory motions. In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:

(1) A defect in the institution of the prosecution;

(continued...)

(...continued)

(2) A defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense;

(3) An unlawful search, seizure, interception of wire or

8

raising a theory of suppression on appeal that was not argued in the circuit court. *See Ray v. State*, 435 Md. 1, 19, 76 A.3d 1143, 1153 (2013); *Joyner v. State*, 208 Md. App. 500, 519, 56 A.3d 787, 798-99 (2012); *Carroll v. State*, 202 Md. App. 487, 513, 32 A.3d 1090, 1104 (2011), *aff'd*, 428 Md. 679, 53 A.3d 1159 (2012).

Rule 8-131(a) provides that "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court." Rule 4-252 provides that in the circuit court, a motion claiming an unlawfully obtained admission, statement, or confession must be raised in conformity with the Rule, shall be in writing unless directed otherwise by the court *and shall state the grounds upon which it is made*. Rule 4-252(a)(4), (e). Unless a defendant shows good cause to excuse lack of conformity with the rule, *it is waived.* Rule 4-252(a). This Rule applies to a failure to file a motion to suppress as well as to a failure to include on the trial level the specific theory raised on appeal. *Ray*, 435 Md. at 19, 76 A.3d at 1153 ("Maryland Rule 4-252 dictates that Petitioner, by failing to advance before the Circuit Court the theory that his unlawful arrest

---

oral communication, or pretrial identification;
(4) An unlawfully obtained admission, statement, or confession; and
(5) A request for joint or separate trial of defendants or offenses.
(b) Time for filing mandatory motions. A motion under section (a) of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4-213(c), except when discovery discloses the basis for a motion, the motion may be filed within five days after the discovery is furnished."

9

requires suppression of all evidence that was the fruit of that unlawful arrest, waived the right to have that claim litigated on direct appeal."). *See also United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005) ("[I]n the context of a motion to suppress, a defendant must have advanced substantially the same theories of suppression in the district court as he or she seeks to rely upon in this Court.").

Before this Court, appellant offers no reason for the failure to raise the issue below, other than possibly appellate after-thought, which is insufficient. *See* Appellant's Brief, n. 3.[5] Because appellant did not raise his *Miranda* theory of suppression in the circuit court, we hold that pursuant to Rule 4-252, that argument is affirmatively waived.

Recognizing that under Rule 4-252 his *Miranda* argument is waived, appellant relies upon Maryland Rule 8-131 and plain error as his life raft. While Rule 8-131(a) provides that "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court," it allows for the possibility of plain error review.

There is tension, however, between Rule 8-131, which allows for plain error review, and Rule 4-252, which provides that grounds for suppression not argued at the suppression hearing are *affirmatively waived*. The language of affirmative waiver suggests that plain error review is unavailable, and that an appellant seeking review must instead show good

[5]Appellant states in footnote 3 of his brief that "should this Court decline to reach the merits of these arguments, Appellant retains the right to argue in post-conviction proceedings that trial counsel was ineffective in failing to preserve them."

cause for the failure to raise the issue in the circuit court.  We hold that because appellant failed to raise his arguments at the hearing below, they are affirmatively waived and we will not review for plain error.

We considered this issue in *Carroll v. State*, 202 Md. App. 487, 513, 32 A.3d 1090, 1104 (2011), *aff'd*, 428 Md. 679, 53 A.3d 1159 (2012).  In *Carroll*, the defendant filed a motion to suppress, but withdrew the motion before trial and hence, the trial court never held a suppression hearing.  On appeal, appellant argued that the trial court's admission of the evidence was plain error.  After examining the history of Rule 4-252, and the interplay between Rule 8-131 and 4-252, we held that Rule 4-252 trumps 8-131, and that plain error review is not available to a defendant who fails to conform to the requirements of 4-252.

Writing for the panel in *Carroll*, Judge Kathryn Graeff pointed out that Rule 4-252, previously Rule 736, was patterned after Rule 12 of the Federal Rules of Criminal Procedure. Both rules are similar in providing that motions to suppress must be filed pre-trial and a failure to raise timely objections to the admissibility of an alleged illegal confession constitutes a waiver.  *Kohr v. State,* 40 Md. App. 92, 98, 388 A.2d 1242, 1246 (1978). Where a Maryland rule is similar to or patterned on the federal rule, federal interpretation of the rule is persuasive.  Because Rule 4-252 is patterned after the federal rule, we look to federal decisions addressing the effect of a failure to raise a suppression issue pursuant to Fed. R. Crim. P. 12.

11

Federal courts have rejected plain error review of a suppression issue that was not raised below, holding that the failure to comply with Fed. R. Crim. P. 12 constitutes a waiver of the issue on appeal. *See e.g.*, *United States v. Burke*, 633 F.3d 984, 991 (10th Cir. 2011), *cert. denied*, 131 S.Ct. 2130; *United States v. Rose*, 538 F.3d 175 (3d. Cir. 2008); *United States v. Wright*, 215 F.3d 1020, 1026 (9th Cir. 2000), *cert. denied*, 121 S.Ct. 406; *United States v. Chavez-Valencia*, 116 F.3d 127, 129-33 (5th Cir. 1997), *cert. denied*, 522 U.S. 926.

In *Rose*, the United States Court of Appeals for the Third Circuit considered whether a criminal defendant who failed to raise a reason to suppress evidence before the District Court may raise the reason on appeal. The court held that absent good cause, he cannot and that such a suppression issue is waived under Fed. R. Crim. P. 12, which trumps Rule 52(b)'s[6] plain error standard in the context of motions to suppress. *Rose*, 583 F.3d at 182-83. The defendant advanced on appeal different arguments for suppression than he raised at the trial level. The court held that the "holding applies not only where the defendant failed to file a suppression motion at all in the district court, but also where he filed one but did not include the issues raised on appeal." *Id.* at 182. The court stated as follows:

> "[I]n the context of a motion to suppress, a defendant must have advanced substantially the same theories of suppression in the district court as he or she seeks to rely upon in this Court—in other words, a litigant cannot jump from theory to theory like a bee buzzing from flower to flower."

---

[6]The current version of Fed. R. Crim. P. 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

12

*Id.* at 179-80 (internal quotation marks omitted). The court surveyed other federal circuits and noted that although not universal, "the prevailing rule is that the failure to assert a particular ground [for suppression] operates as a waiver of the right to challenge the admissibility of the evidence on that ground." *Id.* at 180, *quoting* 6 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.2(a) (4th ed. 2004) (modification in original). The court noted that even when the suppression hearing record is developed sufficiently for the appellate court to address plain error, it should decline to do so because of the language of the Federal Rule. *Id.* at 183 n.8.

In the case *sub judice*, the argument appellant raises before us on appeal is totally different from the arguments he raised below. He raised no *Miranda* issue below, and appellant has not shown any cause, no less good cause, for his failure to do so. Pursuant to Rule 4-252, his *Miranda* argument that his right to remain silent was not "scrupulously honored" was affirmatively waived, and plain error review is not available.

We turn to appellant's other argument: that his statements were inadmissible at trial because they were made during plea negotiations within the purview of Rule 5-410, and therefore, nothing that transpired there was admissible in evidence. This argument was not affirmatively waived in the same sense as appellant's Rule 4-252 argument is waived because appellant's 5-410 argument is a trial evidentiary one, not a mandatory motion falling within the ambit of Rule 4-252. He was required, however, to raise the issue below as required by Rule 8-131. He failed to do so. He is not barred, however, from seeking plain error review.

13

Plain error review "is reserved for those errors that are compelling, extraordinary, exceptional or fundamental to assure the defendant of a fair trial." *Robinson v. State*, 410 Md. 91, 111, 976 A.2d 1072, 1084 (2009). It involves four prongs: (1) the error must not have been "intentionally relinquished or abandoned"; (2) the error must be clear or obvious, not subject to reasonable dispute; (3) the error affected appellant's substantial rights, which means he must demonstrate that it affected the outcome of the court proceeding; (4) the appellate court has discretion to remedy the error, but this ought to be exercised only if the error affects the fairness, integrity, or public reputation of judicial proceedings. *State v. Rich*, 415 Md. 567, 578, 3 A.3d 1210, 1216 (2010).

We hold that although appellant's argument is not procedurally barred from plain error review, it does not meet the threshold for plain error review—that is, it is not compelling, extraordinary, exceptional or fundamental to assure a fair trial. Moreover, it is not even error.

Appellant argues that both his statements to the detectives should have been excluded because they were made in the context of settlement negotiations. He cites Rule 5-410(a), which provides as follows:

> "Except as otherwise provided in this Rule, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> \* \* \*
>
> (4) any *statement made in the course of plea discussions with an attorney for the prosecuting authority* which do

14

not result in a plea of guilty or nolo contendere or which result in a plea of guilty or nolo contendere which was not accepted or was later withdrawn and vacated." (emphasis added).

Rule 5-410(a)(4) is inapplicable here. The statements at issue that appellant made were not to "an attorney for the prosecuting authority" but to two police detectives. Appellant's conduct did not come within the ambit of the Rule. There was no error here.

## III.

We turn to appellant's constitutional argument that he did "not knowingly and intelligently[7] waive the right to testify" and his contention that we must reverse because he waived his right to testify based on his trial counsel's incorrect legal advice. His attorney told him, erroneously, that if he testified, the State could impeach him with his prior conviction for first-degree assault.

Appellant argues that because the trial court erred in failing to correct the erroneous advice defense counsel provided him regarding his right to testify, his waiver of that right was not knowing and voluntary. Defense counsel told appellant, in open court, that his prior first-degree assault conviction was admissible for impeachment purposes. That advice was incorrect. First-degree assault is not an impeachable conviction. *See Christian v. State*, 405 Md. 306, 320, 951 A.2d 832, 840 (2008) (first-degree assault is a statutory replacement for

_____

[7]We point out that the standard is "knowing and voluntary," and not "knowing and intelligent."

aggravated assaults such as assault with intent to murder or assault with intent to maim and disfigure); *Fulp v. State*, 130 Md. App. 157, 167, 745 A.2d 438, 443 (2000) (assault with intent to murder is not an impeachable offense). Appellant argues that trial counsel provided material erroneous advice and that the trial judge, "whose responsibility it was to safeguard appellant's fundamental rights, failed to correct him." He says that because the State was the beneficiary of the error, the State has the burden of showing two things: that the incorrect advice did not influence appellant's election not to testify, and that the court's error was harmless. He concludes that because it is highly likely that the misinformation affected his decision not to testify, this Court must reverse.

The State's response is multi-fold. First and foremost, the State maintains that the error was created by appellant's counsel and it is appellant's burden to show that the error affected his election not to testify. Moreover, the State continues, even though trial counsel's advice was facially incorrect advice, and hence the trial court should have taken corrective measures, reversal is not required where there is no evidence that the incorrect advice influenced appellant's election. The State's second argument is the "invited error doctrine." The State maintains that a party cannot create error and then obtain a benefit, such as a mistrial or reversal, from that error. Finally, the State suggests that, absent evidence of detrimental reliance by appellant on the erroneous advice, claims such as this are best left to post-conviction proceedings.

It is clear that a criminal defendant has a constitutional right to testify in his or her defense. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). The recognition of this right by the United States Supreme Court was a change from the common law view, which disqualified criminal defendants from testifying because of their interest in the outcome of the trial. *Id. See also Jackson v. State*, 340 Md. 705, 711-12, 668 A.2d 8, 11 (1995) (noting that at common law, a person convicted of an infamous crime or a crime involving dishonesty was incompetent to testify). *See generally* 2 J. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW §§ 576, 579 (Chadbourn ed. 1979). The Supreme Court explained that a defendant's right to testify at trial, although not found in the text of the Constitution, "has sources in several provisions of the Constitution," including the Due Process Clause of the Fifth and Fourteenth Amendments, and the Compulsory Process Clause of the Sixth Amendment. *Rock*, 483 U.S. at 51-52. Additionally, "[t]he opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Id.* Because the right to testify is fundamental to a fair trial, the defendant must waive that right knowingly and voluntarily. *Gregory v. State*, 189 Md. App. 20, 32, 983 A.2d 542, 549 (2009); *Johnson v. Zerbst*, 304 U.S. 458 (1938).

The defendant's right to testify is a personal right which may be waived only by the defendant, and not by counsel. *Tilghman v. State*, 117 Md. App. 542, 553, 701 A.2d 847, 852 (1997). Courts around the country differ in the manner in which the defendant's right is protected. Some courts assign the protection of this right to the court, some to defense

17

counsel, and others leave it to the defendant. *See, e.g.*, *Brown v. Artuz*, 124 F.3d 73, 78-79 (2d Cir. 1997).

In Maryland, when a defendant is represented by counsel, there is no obligation on the part of the court to advise the defendant of the right to testify. *Tilghman*, 117 Md. App. at 554, 701 A.2d at 853; *Stevens v. State*, 232 Md. 33, 39, 192 A.2d 73, 77 (1963). Ordinarily, we recognize a presumption, premised on the permitted inference that an attorney, as an officer of the court, follows the law and performs his or her duties, that a represented defendant has been told by counsel of his or her constitutional rights. *Tilghman*, 117 Md. App. at 554-55, 701 A.2d at 853. Moreover, even though the right to testify is personal to the defendant, and must be waived by the defendant personally, the trial court may assume that counsel has advised the defendant about that right and the correlative right to remain silent and, if the defendant does not testify, that the defendant has effectively waived the right to do so. *Id.* at 555, 701 A.2d at 853.

The law is different as to self-represented defendants. In that case, in Maryland, the trial court must advise the defendant of the constitutional right to testify and to remain silent to enable the defendant to make an informed choice as to whether to testify or to waive the right to do so. *Id.* at 554, 701 A.2d at 853; *Martin v. State*, 73 Md. App. 597, 602, 535 A.2d 951, 954 (1988).

There are times, however, when a court has a duty to act, even when a defendant is represented by counsel. In *Tilghman*, we examined several of those circumstances. We

18

looked at *Hamilton v. State*, 79 Md. App. 140, 555 A.2d 1089 (1989), a case in which the words and conduct of the mentally limited defendant in court made it evident that he did not understand that guilt could not be inferred from his failure to testify. The defendant testified, and was convicted of first-degree rape, kidnapping, and assault with intent to disable. We reversed, holding that the defendant's waiver of his right to remain silent was not knowing and voluntary, and hence was invalid. *Id.* at 151, 555 A.2d at 1094. Even though the defendant had been represented by counsel, the presumption that a represented defendant has been advised properly of his constitutional rights to testify and to remain silent is rebuttable and in that case, was in fact, overcome. We held that "if, through . . . inquiry [by the court] or otherwise, it appears to the court that either such advice was not, in fact, given or that the defendant does not understand what he has been told," the presumption is overcome, and the trial court should "take some further action to assure itself that the defendant is properly advised and does understand the nature and consequences of the election he must make." *Id.* at 150, 555 A.2d at 1094.

In *Gilliam v. State*, 320 Md. 637, 579 A.2d 744 (1990), the Court of Appeals held that trial judges have no affirmative duty to inform represented defendants of their right to testify *except* "where it becomes clear to the trial court that the defendant does not understand the significance of his election not to testify or the inferences to be drawn therefrom[.]" *Id.* at 652-53, 579 A.2d at 751. The Court in *Gilliam* was dealing with an ambiguity in the advice

to the defendant. There, trial counsel, in advising Gilliam of his right to testify, told him, "nor will the court find you guilty if you elect to remain silent."

Gilliam argued on appeal that he may have been under the misapprehension that if he did not testify, the court could not find him guilty at all. He argued that the trial court had a duty to step in and correct trial counsel's error, and that its failure to do so warranted reversal. The Court of Appeals disagreed. The Court explained that there was ample evidence on the record that Gilliam had been advised previously of his right to testify by counsel, and that the gratuitous colloquies at trial neither added nor detracted from the presumption that Gilliam had been informed adequately of his right. *Id.* at 655-56, 579 A.2d at 753. The Court rejected the notion that merely an ambiguous statement mandated reversal, and focused instead on whether the statement *had any effect* on the defendant's decision as to whether to testify. The Court stated as follows:

> "There is no reason to conclude, and we do not conclude, that as the result of the ambiguous statement in the lengthy dialogue by defense counsel Gilliam believed that if he elected not to testify at trial he must be found not guilty, and that when that did not occur, if he elected not to testify at his sentencing hearing, he could not be sentenced to death. *Where there is no indication that the defendant has a misperception of his right to remain silent and the effect of exercising that right*, and where he expressly indicates he has been fully advised of and understands the right, as well as the effect of a waiver, then an ambiguous statement made by defense counsel during an 'on the record' explanation does not result in reversible error if the trial court fails to intervene and clarify counsel's ambiguous statement."

*Id.* at 656, 579 A.2d at 753 (emphasis added).

20

*Morales v. State,* 325 Md. 330, 600 A.2d 851 (1992), involved an unrepresented defendant. The trial court informed Morales of his right to testify. Morales indicated that he would testify. The trial court asked him if he was sure, and told him that if he testified, he could be impeached with any of his prior criminal convictions. Morales changed his mind promptly and decided not to testify. The trial court's advisements were erroneous, in that most of Morales prior convictions were not impeachable offenses. The Court of Appeals reversed, holding that because "Morales apparently changed his decision to testify based on the trial court's incorrect implication that all of his prior convictions could be used to impeach him, [Morales'] decision to waive his constitutional right to testify and to exercise his constitution right to remain silent was not knowingly and intelligently made." *Id.* at 339, 600 A.2d at 855.

*Oken v. State*, 327 Md. 628, 612 A.2d 258 (1992), concerned a defendant's waiver of his right to testify at a criminal responsibility hearing. On appeal, he contended that the trial court advised him erroneously of his right to testify at the criminal responsibility hearing by telling him that all of his testimony at that hearing would be admissible at his sentencing hearing in a capital case. As a result of that advice, Oken maintained that he did not knowingly, intelligently, and voluntarily waive his right to testify. Oken was represented by counsel, but the trial court gratuitously advised him of his rights to testify or to remain silent. The Court of Appeals held that, in light of the record, "we find no clear indication that the trial court's advice regarding Oken's right to testify had any influence on his decision not to

testify," and therefore, the Court was not convinced "that Oken did not knowingly, intelligently, or voluntar[ily] waive his right to testify at the criminal responsibility hearing." *Id.* at 641-42, 612 A.2d at 264.

*Thanos v. State*, 330 Md. 77, 622 A.2d 727 (1993), is similar to *Tilghman* and the case at bar. The defendant was represented by counsel. When advising Thanos of his right to testify in open court, his attorney told him that he could be impeached with *any* of his prior criminal convictions. This advice was incorrect, because not all of his convictions were admissible against him. The Court explained first that "an ambiguity in an on-the-record colloquy between the defendant and his counsel concerning the right to testify will not necessarily undermine a knowing and intelligent waiver of that right[.]" *Id.* at 91, 622 A.2d at 733. Drawing a comparison to *Gilliam*, the Court of Appeals held as follows:

> "The record gives no hint that counsel's questionable advice *influenced Thanos's decision not to testify*. Before the trial began, Thanos stated on the record that he had no intention to testify. He confirmed to the court at that point that he had discussed with counsel his right to testify and his desire to forego that right. Defense counsel subsquently indicated no fewer than three times that the defense would present no evidence. It was only at the conclusion of the State's case that defense counsel made the ambiguous statement about prior convictions to Thanos in explaining his right to testify; but nothing in Thanos's responses suggests that counsel's statement *caused him to change his mind about testifying*, for the record clearly reflects that he had already decided not to do so."

*Id.* at 91-92, 622 A.2d at 734 (emphasis added). Again, the Court of Appeals declined to reverse because appellant did not rely upon the erroneous advice in declining to testify.

22

The *Tilghman* court examined the above cases and affirmed. In *Tilghman*, the defendant was represented by counsel, and when advising his client of his right to testify, counsel stated that if "you have a prior conviction [the prosecutor] will ask you about those convictions[.]" We distinguished the facts in *Tilghman* from the prior cases on the matter, particularly *Thanos*, as follows:

> "While this case does not present clear-cut evidence that appellant's election to remain silent resulted directly and solely from the advice that he was given about impeachment with prior convictions, as existed in *Morales*, we cannot say that appellant's decision to waive his right to testify was not influenced by his attorney's 'on the record' advice. *Moreover, the record is devoid of evidence that demonstrates or from which we might infer that appellant made his decision to testify on a basis other than the advice that was imparted to him by counsel, during the trial.* For that reason, and mindful that the issue raised by appellant is of a constitutional dimension, we turn to the question whether the trial court committed error that resulted in appellant ineffectively waiving his right to testify."

*Tilghman*, 117 Md. App. at 560, 701 A.2d at 856 (emphasis added; internal citation omitted).

We then turned to the question of whether the trial court had a duty to correct counsel's error.

The bottom line in *Tilghman* is that, as "the Court of Appeals made plain in *Thanos* and *Gilliam*, the question whether a trial court committed error in not assuring that a represented defendant was properly advised of his rights to testify and to remain silent is only brought to bear *if the defendant waived one of those rights as a direct result of* being misadvised by counsel." *Id.* at 559, 701 A.2d at 855 (emphasis added). We explained further that the court's duty to intervene arises only when it is placed on clear notice that the

23

defendant does not understand his rights. *Id.* at 561, 701 A.2d at 856. We defined clear

notice as follows:

> "[I]f it is otherwise manifest to the court that the defendant is
> deciding whether to testify on the basis of erroneous legal
> advice that will render his decision unknowing and involuntary,
> the court must take action to assure that the defendant is
> correctly advised. Such a duty will arise upon counsel imparting
> advice to the defendant, in the presence of the court, that is
> intrinsically and facially incorrect, *i.e.*, is readily identifiable as
> erroneous, without reference or resort to extrinsic information.
> At that point, the presumption of correct advice is overcome,
> irrespective of the defendant's outward appearance of
> understanding, as it is evident to the court that counsel's advice
> is wrong, and the court must step in, as it is also evident that the
> defendant cannot be electing his constitutional rights with
> adequate knowledge of the meaning of that choice."

*Id.* at 564, 701 A.2d at 858. We held that reversal was unwarranted. Tilghman's attorney

told him that he could be impeached with his prior convictions, but never identified the

particular convictions. The court found that "counsel's advice was not inherently, overtly,

and facially erroneous." *Id.* The trial court was not placed on clear notice of a problem

because it had no reason to suspect that Tilghman had inadmissible convictions. Because the

attorney's advice was not facially erroneous, the trial court did not err in failing to correct the

attorney's mistake. *Id.* at 565, 701 A.2d at 858.

*Gregory v. State*, 189 Md. App. 20, 983 A.2d 542 (2009), is the most recent case in

which we discussed an allegation that trial counsel advised a defendant erroneously. Defense

counsel and the trial court told Gregory that if he had a prior criminal record, the State could

question him about those convictions, "subject to various restrictions." Gregory decided to

24

testify. On appeal, Gregory argued that he lacked sufficient information in making his decision to testify because he was led to believe that any felony conviction could be used against him, and that he was not told that he could be impeached only with convictions less than fifteen years old. We held that Gregory was not advised of his rights erroneously because he was never told that his entire criminal record could be used against him, and he was informed that his convictions were admissible only subject to various restrictions. *Id.* at 37, 983 A.2d at 552. Furthermore, we explained as follows:

> "Even if Gregory was erroneously advised of his rights, the record is devoid of any evidence showing that Gregory relied on the advice in deciding to testify. Detrimental reliance on the erroneous advice is a necessary element in determining that the defendant did not knowingly and voluntarily waive his constitutional right to remain silent."

*Id.* at 38, 983 A.2d at 552.

It is clear in the case *sub judice* that trial counsel's advice about impeachment with the first-degree assault conviction was facially incorrect and that the trial court should have corrected the erroneous advice. The State, citing *State v. Duckett*, 306 Md. 503, 512, 510 A.2d 253, 258 (1986), concedes that first-degree assault is not a crime relevant to credibility. Before us, however, appellant must nonetheless establish that the incorrect advice influenced his election not to testify. It is appellant's burden to show reliance upon his counsel's legal advice, not the State's burden to show he did not rely on the misstatement.[8] Our cases

---

[8]If *Tilghman v. State*, 117 Md. App. 542, 560, 701 A.2d 847, 856 (1997), can be interpreted to suggest that a reviewing court presumes reliance if nothing in the record indicates clearly that the defendant did not rely on the erroneous advice, in our view, those

support this conclusion, as do those from every court in the country to have considered the issue.[9] Absent detrimental reliance, appellant is not entitled to a reversal. *See, e.g.*, *Gilliam*, 320 Md. at 656, 579 A.2d at 753; *Morales*, 325 Md. at 339, 600 A.2d at 855; *Oken*, 327 Md. at 641, 612 A.2d at 264; *Thanos*, 330 Md. at 91-92, 622 A.2d at 734; *Gregory*, 189 Md. App. at 38, 983 A.2d at 552. *See also Brooks v. State*, 104 Md. App. 203, 231, 655 A.2d 1311, 1324 (1995) (citing *Gilliam* and *Thanos* for the proposition that reversal is not required unless there is some clear indication that the defendant was misled by an ambiguity in the waiver colloquy). *Cf. Winters v. State*, 434 Md. 527, 548, 76 A.3d 986, 998 (2013) (disavowing *Brooks* to the extent that its statement that the defendant must show reliance applies to the waiver of the right to a jury trial).[10]

---

statements are *dicta*. The defendant has the burden to demonstrate reliance on counsel's misstatement. *See Gregory v. State*, 189 Md. App. 20, 38, 983 A.2d 542, 552 (2009).

[9]Other jurisdictions, addressing the alleged unknowing waiver of the right to testify in the post-conviction context and in ineffective assistance of counsel claims, have concluded unanimously that the defendant has not met the burden to demonstrate prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), unless the defendant changed his or her mind because of the attorney's advice. *See, e.g.*, *Commonwealth v. Freeman*, 564 N.E.2d 11, 15 (Mass. Ct. App. 1990) (holding that the defendant must prove that "but for his counsel's erroneous advice concerning the admissibility of his probation record, he would have testified in his own defense."); *Jones v. State*, 902 P.2d 965, 970 (Haw. 1995); *Horton v. State*, 411 S.E.2d 223, 224 (S.C. 1991); *Everhart v. State*, 773 So. 2d 78, 79 (Fla. Dist. Ct. App. 2000).

[10]*Winters v. State*, 434 Md. 527, 76 A.3d 986 (2013), does not compel a result contrary to the one we reach here. *Winters* reversed because "it is the ultimate responsibility of the trial court to *ensure* that the defendant makes a knowing and voluntary waiver," *id.* at 536, 76 A.3d at 991 (emphasis in original), and that the trial court's erroneous information may have misled Winters and thereby influenced his decision to waive his right to a jury trial. *Id.* at 539, 76 A.3d at 993. The defendant did not have to establish that he relied upon the

There is no indication in the case *sub judice* that appellant relied detrimentally on his trial counsel's advice. Appellant does not claim that he would have testified but for the erroneous advice given by his counsel. He baldly asserts, by argument only, that it is "highly likely" that his election was affected, which is mere speculation. Appellant has never claimed that he had decided to testify at his trial or that he changed his mind after his lawyer told him about the impeachment risk. After appellant was advised by his counsel, the judge adjourned court for the day and appellant had the evening to consider his decision. He met with his attorney over the evening recess and told the court the next day that he did not wish to testify. Counsel told the court: "Your Honor, I've spoken to my client, Mr. Savoy, and Mr. Savoy, at this time, would like to invoke his Fifth Amendment Right and not testify."

Furthermore, as the State argues, appellant had nothing to gain from testifying and much to lose. Defense's theory of the case was that Mr. Harkless committed the murder, and appellant maintained in his discussion with the police that he was not at the scene of the crime. If appellant presented the same alibi he gave to the police, it would have been rebutted by the State's evidence that the police investigated it and found no support for it. If appellant presented a new alibi, the State could have impeached him with his previous

---

erroneous advice. *Id.* at 545, 76 A.3d at 996.

The instant case is different. Although the right to testify in one's defense is a fundamental constitutional right, a trial court is not required to explain that right to a defendant. Although defense counsel erroneously explained the consequences of testifying to the defendant, and the trial court erred in not correcting the erroneous advice, appellant must show reliance on the erroneous advice. In addition, harmless error analysis is applicable, and is not applicable to the waiver of a jury trial. *Nalls v. State*, 437 Md. 674, 694, 89 A.3d 1126, 1138 (2014).

alibi. The defense's entire argument was that appellant did not do it; thus appellant could not have testified credibly that he acted in self-defense. Appellant claimed that he was not at the scene, therefore he could not have presented any evidence that Mr. Harkless committed the crime. Nor could appellant have credibly contested the inculpatory statements he made to the police without damaging his own case. Appellant's only reasonable recourse was to invoke his Fifth Amendment right to remain silent, and that is exactly what he did.[11]

In such a situation, we agree with the State that the question of whether appellant detrimentally relied on his attorney's advice is best left for post conviction proceedings. *See,*

---

[11] Appellant's argument that reversal is mandated because the trial court should have taken corrective measures fails for another reason—the harmless error doctrine. We do not reach harmless error, or prejudice to appellant, and leave that to any post-conviction proceeding he indicates he will file if he fails in this appeal.

Most errors are subject to the harmless error analysis. The exception to this general rule is structural error, that is, errors which undermine the fundamental legitimacy of the judicial process. *See, e.g.*, *Boulden v. State*, 414 Md. 284, 307-08, 995 A.2d 268, 282 (2010); *Redman v. State*, 363 Md. 298, 304 n.5, 768 A.2d 656, 659 n.5 (2001).

Even though the right to testify is an important constitutional right, nearly all jurisdictions to consider the issue have held that the denial of that right is not structural error, and thus, is subject to harmless error analysis. *See e.g.*, *Woolfolk v. Commonwealth*, 339 S.W.3d 411, 418-19 (Ky. 2011); *Momon v. State*, 18 S.W. 3d 152, 165 (Tenn. 2000); *United States v. Tavares*, 100 F.3d 995, 999 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1160 (1997); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Ortega v. O'Leary*, 843 F.2d 258, 262 (7th Cir. 1988), *cert. denied*, 488 U.S. 841; *Wright v. Estelle*, 549 F.2d 971, 974 (5th Cir.
(continued...)

(...continued)
1977) *adhered to on reh'g*, 572 F.2d 1071 (1978); *Agosto v. State*, 288 S.W.3d 113, 116 (Tex. App. 2009); *People v. Johnson*, 72 Cal. Rptr. 2d 805, 820 (Cal. Ct. App. 1998); *People v. Solomon*, 560 N.W.2d 651, 654-56 (Mich. Ct. App. 1996). That test is whether it appears "beyond a reasonable doubt [] that the error in no way influenced the verdict." *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976). *See also Dionas v. State*, 436 Md. 97, 118, 80 A.3d 1058, 1070-71 (2013).

*e.g.*, *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992) (holding that because defense counsel is primarily responsible for advising the defendant of the right to testify, the appropriate vehicle for claims that that right was violated is ineffective assistance of counsel); *State v. Robinson*, 982 P.2d 590, 598 (Wash. 1999) (same); *State v. Arguelles*, 921 P.2d 439, 441 n.3 (Utah 1996) (same). Although appellant had many good reasons not to testify, a post-conviction proceeding can elucidate the factors that influenced appellant's election, as well any off-the-record conversations between appellant and his attorney about his decision.[12]

IV.

Finally, we address appellant's argument that the court abused its discretion in admitting three photo arrays in which Ms. Buschman, Ms. Jay, and Mr. Harkless had identified appellant subsequent to Mr. Ames' murder. Appellant argues that the photos had no probative value because all three witnesses testified that they knew appellant previously. Their selection of his photo from an array added nothing to their in-court identification. Appellant maintains that the photos prejudiced him because the jury must have surmised that the police had these photos only because appellant had prior contacts with the criminal justice system. The State counters that the court did not abuse its discretion in admitting the

---

[12]In light of our holding that appellant failed to show that he relied detrimentally on the erroneous advice, we decline to address the State's argument that appellant is not entitled to reversal because of the invited error doctrine.

photographic arrays because they were probative of the shooter's identity and there was nothing suggestive about the photos that would cause unfair prejudice. We hold that the court exercised its discretion properly in finding that the probative value of the evidence outweighed its prejudicial impact.

Rule 5-403 authorizes a trial court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Extra-judicial photographic identifications made shortly after the incident are admissible in evidence, and lack the suggestiveness inherent in an in-court identification. *Straughn v. State*, 297 Md. 329, 332, 465 A.2d 1166, 1168 (1983). When the identity of the perpetrator is an issue in the case, that the jury may recognize photos as mug shots and infer that the defendant had prior contacts with the judicial system is insufficient prejudice to warrant reversal. *Id.* at 336-37, 465 A.2d at 1170-71.

The court did not abuse its discretion here. Identification of the murderer was the central issue at trial. Ms. Jay's and Ms. Buschman's out-of-court identification of appellant as the murderer shortly after the incident was highly relevant. The fact that the jury might have surmised that appellant had a prior criminal record is insufficient prejudice to warrant reversal.[13]

_____

[13]Although Mr. Harkless' identification of appellant was less relevant than the eyewitnesses' identification, the admission of the photo array shown to Mr. Harkless, which was identical to the other two photo arrays, could not have added any additional prejudice.

Appellant's reliance on *Arca v. State*, 71 Md. App. 102, 523 A.2d 1064 (1987), is unavailing. In *Arca*, we held that the trial court abused its discretion in admitting mug shots of the defendant in a photo array. *Id.* at 106, 523 A.2d at 1066. There, however, the identity of the defendant was not at issue, and therefore, the photographs had "zero" probative value. *Id.* Additionally, it was clear that the photos were police mug shots with only the chestplate identification numbers covered over. *Id.* at 104, 523 A.2d at 1065. In the instant case, identity was the central issue, and the photos were not clearly mug shots in the way described by *Arca*; rather, they showed only the subject's face and neck area. *See Wagner v. State*, 213 Md. App. 419, 455, 74 A.3d 765, 785 (2013) (distinguishing *Arca* on these grounds). The trial court did not abuse its discretion in admitting the photo arrays.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

31